JEFFREY T. THOMAS, SBN 106409
  jtthomas@gibsondunn.com
ANNE Y. BRODY, SBN 252279
  abrody@gibsondunn.com
MATTHEW C. PARROTT, SBN 302731
  mparrott@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone:  949.451.3800
Facsimile:   949.451.4220

Attorneys for Plaintiff
ALLERGAN, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLERGAN, INC.,<br><br>Plaintiff,<br><br>v.<br><br>LIQUIDIA TECHNOLOGIES, INC. and ENVISIA THERAPEUTICS INC.,<br><br>Defendants. | CASE NO. CV17-03377 JFW (SKx)<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL FOR:**<br><br>**(1) TRADE SECRET MISAPPROPRIATION UNDER THE DEFEND TRADE SECRETS ACT;**<br><br>**(2) TRADE SECRET MISAPPROPRIATION UNDER THE CALIFORNIA UNIFORM TRADE SECRETS ACT;**<br><br>**(3) UNFAIR COMPETITION (CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200 *ET SEQ.*);**<br><br>**(4) BREACH OF CONTRACT;**<br><br>**(5) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br><br>**(6) INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS** |

Gibson, Dunn &
Crutcher LLP

Plaintiff Allergan, Inc. ("Allergan") hereby submits its Complaint and Demand for Jury Trial against Liquidia Technologies, Inc. ("Liquidia") and Envisia Therapeutics Inc. ("Envisia") (collectively, "Defendants"), seeking relief for trade secret misappropriation under the Defend Trade Secrets Act (18 U.S.C. § 1836 *et seq*.), trade secret misappropriation under the California Uniform Trade Secrets Act (Cal. Civ. Code § 3246 *et seq*.), unfair competition (under California Business and Professions Code § 17200 *et seq*.), breach of contract, breach of the implied covenant of good faith and fair dealing, and intentional interference with contractual relations. Allergan hereby alleges upon personal knowledge with respect to itself and its own acts and upon information and belief with respect to all other matters, as follows:

## THE PARTIES

1. Allergan, Inc. is a corporation organized and existing under the laws of the State of Delaware with a place of business at 2525 Dupont Drive, Irvine, California 92612. Allergan, Inc. owns the trade secrets at issue.

2. On information and belief, Liquidia is a corporation organized and existing under the laws of the State of Delaware with a place of business at 419 Davis Drive, Suite 100, Morrisville, North Carolina 27560.

3. On information and belief, Envisia is a corporation organized and existing under the laws of the State of Delaware with a place of business at 4301 Emperor Blvd., Suite 200, Durham, North Carolina 27703.

## JURISDICTION AND VENUE

4. Allergan's first cause of action arises under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*. This Court thus has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331. The Court has supplemental subject matter jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to the dispute occurred in this District, and

the misappropriated trade secrets and related documents were provided to Defendants via emails, meetings, and calls with Allergan's employees working in this District. Additionally, Allergan's trade secrets were developed and are situated in this District.

6. The Court has personal jurisdiction over Liquidia because Liquidia entered into long-term contractual agreements with Allergan in California; Liquidia met with Allergan at Allergan's place of business in California and communicated via meetings, calls, and emails with Allergan's employees working in this District; Liquidia's unfair conduct, breach of contract, breach of the implied covenant of good faith and fair dealing, and misappropriation of Allergan's trade secrets were aimed at California and caused Allergan harm in California; and Liquidia has conducted substantial business in California and purposely availed itself of the privilege of conducting business within California, such as by presenting scientific findings in California and transferring funds through California.

7. The Court has personal jurisdiction over Envisia because Envisia was spun out of Liquidia at least in part for the purpose of misappropriating Allergan's trade secrets and causing Allergan harm in California and in this District; Envisia's corporate officers and scientists knew about Liquidia's contractual agreements with Allergan and/or had access to Allergan's proprietary information that derived from conduct that occurred in California; Envisia's unfair conduct, intentional interference with contractual relations, and misappropriation of Allergan's trade secrets were aimed at California and caused Allergan harm in California; and Envisia has conducted substantial business in California and purposely availed itself of the privilege of conducting business within California, such as by presenting scientific findings in California and transferring funds through California.

# FACTUAL ALLEGATIONS

## A. Allergan Has Invested Over 30 Years of Research and Development in Discovering and Commercializing New Glaucoma Treatments

8. Glaucoma is the leading cause of irreversible blindness. In the United States, about 10% of the blind population are blind due to glaucoma. By 2020, glaucoma may affect more than three million people in the United States and approximately 80 million people worldwide. There is no known cure for glaucoma.

9. Vision loss from glaucoma results from the gradual deterioration of the optic nerve, leading to progressive loss of the field of vision. Risk factors for the development of glaucoma include elevated intraocular pressure ("IOP") and increasing age. Physicians and scientists believe that the elevated IOP found in a majority of glaucoma patients contributes to the gradual optic nerve deterioration.

10. Many available pharmaceutical and surgical treatments are used to slow the progression of glaucoma by lowering a patient's IOP. Physicians typically prescribe topical eye drops containing IOP-lowering agents for a majority of glaucoma patients. But for many patients, administering topical eye drops becomes more difficult with increasing age, leading to low compliance with a dosing regimen that requires repeated drug application.

11. Allergan has been a leading pharmaceutical company that discovers, develops, and commercializes innovative eye care products for treating various ocular disorders, including treatments for glaucoma.

12. For the past 30 or more years, Allergan has invested over hundreds of millions of dollars in discovering and commercializing new glaucoma treatments. For example, Allergan has discovered numerous prostaglandin analogues, including prostamides like bimatoprost, and studied their mechanisms of action in lowering IOP. Allergan also has developed various formulations containing an alpha-adrenergic agonist, brimonidine tartrate, and studied their efficacy and safety in lowering IOP.

13. In the past 20 years, Allergan has commercialized several topical eye drops for lowering IOP in glaucoma patients, including: Lumigan® (bimatoprost, 0.01% and 0.03%); Alphagan® (brimonidine tartrate, 0.2%) and Alphagan® P (brimonidine tartrate, 0.1% and 0.15%); Combigan® (brimonidine tartrate and timolol maleate); and Ganfort® (bimatoprost and timolol maleate; not available in the United States).

14. In addition, Allergan has been researching the design and use of sustained ocular drug delivery systems with an aim to improve patient compliance and drug bioavailability. In particular, Allergan sought to develop a delivery system that would provide a sustained release of bimatoprost and/or other active ingredients to lower a patient's IOP over an extended period of time.

15. After many years of dedicated research and development, Allergan developed a novel sustained release drug delivery system – a biodegradable intracameral implant. Allergan also had compiled proprietary information on its biodegradable intracameral implants, including but not limited to the design parameters, the compositions, the manufacture, quality control, and performance specifications. Around 2011, Allergan was interested in evaluating various manufacturing processes to make Allergan's intracameral implants in a less costly and/or less time-consuming manner.

**B.  Liquidia Had Little or No Prior Experience in Ophthalmology**

16. On information and belief, Defendant Liquidia is involved in the use of PRINT® (Particle Replication in Non-Wetting Template) technology to fabricate small particles for the delivery of biologics and small molecules. Liquidia's PRINT® technology may allow for better control over particle size, shape, and composition.

17. On information and belief, prior to its dealings with Allergan in 2011, Liquidia was fabricating particles for inhaled therapeutics, vaccines, siRNA (small interfering ribonucleic acid), and gene sequencing. But at that time, Liquidia had little

Gibson, Dunn & Crutcher LLP

or no expertise in ophthalmology and was not developing any particles for glaucoma treatment.

18. Around April 2011, Liquidia contacted Allergan to discuss its PRINT® technology to encourage Allergan to evaluate and eventually use the PRINT® technology for drug delivery purposes. During these discussions with Allergan, Liquidia did not disclose that it was developing or intended to develop its own particles for intracameral delivery. It also did not disclose any interest in developing its own glaucoma therapeutics in the immediate future.

**C. Allergan's Agreements with Liquidia to Protect the Secrecy of Allergan's Proprietary Information and to Evaluate Liquidia's PRINT® Technology**

19. From May 2011 to March 2013, so that Allergan could evaluate whether Liquidia's PRINT® technology would work for Allergan's biodegradable intracameral implants, Allergan and Liquidia entered into a confidentiality agreement, two amendments thereto, and two materials transfer agreements.

20. Specifically, on May 16, 2011, Allergan and Liquidia entered into a Confidential Disclosure Agreement ("May 2011 CDA"). On July 2, 2012, Allergan and Liquidia entered into a First Amendment to the May 2011 CDA, which was made effective as of May 16, 2012. On March 25, 2013, Allergan and Liquidia entered into a Second Amendment to the May 2011 CDA.

21. In addition, on December 27, 2011, Liquidia and Allergan entered into a Materials Transfer Agreement ("December 2011 MTA"). Then, on August 16, 2012, Allergan and Liquidia entered into another Materials Transfer Agreement ("August 2012 MTA") (and together with the December 2011 MTA, the May 2011 CDA and its two Amendments, the "Allergan-Liquidia Agreements").

22. The Allergan-Liquidia Agreements imposed confidentiality obligations that required Liquidia not to use or disclose Allergan's proprietary information concerning its biodegradable intracameral implants, other than as necessary for the purposes of Allergan's evaluation of Liquidia's technology. They also restricted

access to Allergan's proprietary information to only Liquidia employees who had a need to know and were bound to keep such information confidential.

23. Moreover, under the Allergan-Liquidia Agreements, Liquidia agreed not to disclose the results of the development of the implants and not to file any patent applications claiming Allergan's trade secrets or modifications thereof.

**D.  Allergan Disclosed Proprietary Information to Liquidia**

24. Pursuant to the Allergan-Liquidia Agreements, Allergan requested Liquidia to use its PRINT® technology to make biodegradable intracameral implants containing bimatoprost and other IOP-lowering agents, respectively. During that time, Liquidia's scientists who communicated with Allergan and had access to Allergan's proprietary information included, but were not limited to, Benjamin Maynor, the Executive Director of Research at Liquidia; Ash Nijhawan, a Vice President at Liquidia; and Andres Garcia, a Senior Scientist at Liquidia.

25. In order for Liquidia to manufacture Allergan's implants, via a series of meetings, calls, and presentations—some of which occurred in California and in this District—Allergan disclosed to Liquidia its proprietary information on its biodegradable intracameral implants, including but not limited to the design parameters, the compositions, the manufacture, quality control, and performance specifications. Allergan also disclosed its proprietary methods to test the quality and performance of the implants.

26. At the time Allergan disclosed this proprietary information to Liquidia, and even to date, Allergan has only included certain limited aspects of this proprietary information in its patent applications. Allergan has not publicly disclosed other aspects of this proprietary information, nor has Allergan disclosed the entire compilation of all the aspects of this proprietary information, since Allergan has maintained the information as trade secrets.

### E.  Liquidia Spun Out Envisia in November 2013

27. In May 2013, Liquidia publicly announced that it was spinning out a new ophthalmology company, and the new company's lead product was for glaucoma treatment. In November 2013, Envisia announced that it was a new ophthalmology company formed by Liquidia, and its lead product ENV515 was an extended-release formulation of a prostaglandin analogue that can provide a sustained reduction in IOP.

28. On information and belief, as of November 2013, Envisia was sharing the same office space as Liquidia's headquarters at 419 Davis Drive, Morrisville, NC 27560. About 20 Liquidia employees started working at Envisia, and some of them also retained their positions at Liquidia.

29. On information and belief, Neal Fowler served as the CEO for both Liquidia and Envisia. Benjamin Yerxa served as the Chief Scientific Officer for both Liquidia and Envisia. Benjamin Maynor served the Executive Director of Research at Liquidia and a Vice-President of Research at Envisia. Andres Garcia became a Principal Scientist at Envisia. Ash Nijhawan served as a Vice President for both Liquidia and Envisia. Janet Tully and Tomas Navratil also worked for both Liquidia and Envisia. On information and belief, these individuals had access to Allergan's trade secrets.

### F.  Liquidia and Envisia Improperly Used Allergan's Proprietary Information to Develop ENV515 Implants in Less Than One Year

30. On information and belief, since spring 2013 or earlier, Liquidia began to use Allergan's proprietary information to develop ENV515, a biodegradable intracameral implant containing a prostaglandin analogue called travoprost.

31. On information and belief, since December 2013, Defendants have been filing patent applications claiming implants embodying Allergan's proprietary information. These patent applications all named Liquidia's employees who had access to Allergan's proprietary information as inventors. On information and belief,

and based on Defendants' patent applications, ENV515 has the design parameters and other specifications similar to or identical to those of Allergan's implants.

32. On information and belief, Envisia licensed Liquidia's PRINT® technology in order to manufacture the ENV515 implants.

33. On information and belief, Defendants are continuing to use Allergan's proprietary information to develop ENV515 implants for their current and future clinical trials. In January of 2015, Envisia initiated Phase 2a clinical trials on ENV515 for lowering IOP. In these ongoing trials, Envisia has been using ENV515 implants coded as ENV515-3, ENV515-3-2, and ENV515-1. On information and belief, and based on Defendants' patent applications, ENV515-3, ENV515-3-2, and ENV515-1 have the design parameters and other specifications similar to those of Allergan's implants.

34. Additionally, as of the date this Complaint is filed, Envisia is conducting clinical trials concerning these implants in Redding, California and other locations.

35. Without using Allergan's proprietary information, it would have taken Defendants several years to independently develop their own biodegradable intracameral implants. But relying on Allergan's proprietary information, Defendants were able to fast-track their development of ENV515 implants. Defendants filed for patent applications on ENV515 as early as December 2013, less than one year after Liquidia announced it was forming a new ophthalmology company. And Defendants initiated clinical trials related to the ENV515 implants less than two years after Liquidia created Envisia.

**G. Defendants Improperly Disclosed Allergan's Proprietary Information to Third Parties and Delayed Allergan's Discovery of Their Misappropriation**

36. On information and belief, since November 2013 or earlier, Liquidia and Envisia have been disclosing various aspects of implant products that embodied Allergan's proprietary information to potential investors and other third parties without Allergan's consent.

37. From May 4 to 8, 2014, Allergan and Envisia attended the Annual Meeting of the Association for Research in Vision and Ophthalmology ("ARVO"). At that ARVO meeting, Envisia presented its intracameral ENV515 implants for lowering IOP and preliminary data. Although Envisia disclosed very little about the ENV515 implants in its presentations, Allergan became concerned that Envisia might have been using Allergan's proprietary information to develop ENV515 implants.

38. On August 13, 2014, counsel for Allergan sent a letter to Liquidia and Envisia, requesting specific information on ENV515 in order for Allergan to analyze whether its trade secrets had been improperly used. Allergan's counsel further requested Liquidia and Envisia, to the extent they were using Allergan's trade secrets, stop using Allergan's trade secrets to develop ENV515.

39. On December 5, 2014, Defendants responded but did not disclose the specific information on ENV515 as requested by counsel for Allergan. Instead, Defendants claimed that, among other things, Allergan disclosed very little proprietary information to Liquidia under the Allergan-Liquidia Agreements; the ENV515 implants were somehow markedly different from Allergan's implants made under the Allergan-Liquidia Agreements; and Defendants somehow developed ENV515 implants using a combination of publicly available information and independently developed information that fell outside the scope of any confidentiality obligations owed by Liquidia.

40. On March 4, 2015, Allergan responded to Defendants' letter of December 5, 2014, disputing Defendants' claims. Allergan also stated that its discoveries and proprietary information were novel and not publicly known. Allergan requested a meeting with Defendants to further discuss and resolve Allergan's concerns.

41. Defendants did not respond to Allergan's March 4, 2015 letter. Allergan learned more about ENV515 only after Defendants' patent applications were first published in June 2015.

42. Recently, Defendants have presented information about the ENV515 implant and the results of their clinical trials to investors and at medical conferences. For example, on information and belief, Envisia presented information about the ENV515 implant to investors in January 2017. Additionally, on information and belief, Envisia presented information about the ENV515 implant at the American Glaucoma Society Annual Meeting held on March 2-6, 2017 in San Diego, California.

43. Allergan developed its biodegradable intracameral implants through years of dedicated research and at great cost. Allergan is currently conducting Phase 3 clinical trials on its bimatoprost intracameral implants. If Defendants are not enjoined from their misappropriation and other tortious conduct, they will cause severe and irreparable harm to Allergan.

## FIRST CLAIM FOR RELIEF

**Trade Secret Misappropriation Under the Defend Trade Secrets Act ("DTSA")**
**(18 U.S.C. § 1836 *et seq*.) (Against All Defendants)**

44. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 43 above, as if fully set forth herein.

45. Allergan owns valuable trade secrets related to Allergan's intracameral implants for glaucoma treatment intended to be used, sold, or shipped in interstate or foreign commerce. As alleged herein, such trade secrets include the implant design parameters, the compositions, the manufacture, quality control, and testing of Allergan's intracameral implants, and compilations thereof.

46. Allergan's trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

47. Allergan has taken reasonable measures to keep such information secret and confidential as alleged herein. Pursuant to the Allergan-Liquidia Agreements, Allergan restricted access to Allergan's proprietary information to only Liquidia

employees who had a need to know and were bound to keep such information confidential. Allergan required Liquidia not to disclose or use Allergan's proprietary information other than for the purposes of the Agreements.

48. As alleged herein, Defendants used improper means to acquire knowledge of Allergan's trade secrets by failing to abide by their confidentiality obligations under the Allergan-Liquidia Agreements. Defendants used and disclosed Allergan's trade secrets without Allergan's express or implied consent, knowing or with reason to know that the knowledge of the trade secrets had been acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or to limit the use of the trade secrets, or was derived from or through a person who owed a duty to Allergan to maintain the secrecy of the trade secrets or limit their use. And Defendants have disclosed and used, and continue to disclose and use, Allergan's trade secrets to develop ENV515 without Allergan's consent. Misappropriating Allergan's trade secrets saved Defendants substantial time and/or money in developing new glaucoma treatments.

49. Defendants' misappropriation of Allergan's trade secrets has been and still is willful and malicious, entitling Allergan to exemplary damages and reasonable attorney fees.

50. Defendants' misappropriation has caused and will continue to cause Allergan significant economic and competitive harm and irreparable injury. Allergan has no adequate remedy at law unless Defendants are enjoined from their wrongful conduct.

## SECOND CLAIM FOR RELIEF

**Trade Secret Misappropriation Under the California Uniform Trade Secrets Act ("CUTSA") (Cal. Civ. Code § 3426 *et seq*.) (Against All Defendants)**

51. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 50 above, as if fully set forth herein.

52. Allergan's trade secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. As alleged herein, such trade secrets include the implant design parameters, the compositions, the manufacture, quality control, and testing of Allergan's intracameral implants, and compilations thereof.

53. Allergan has taken reasonable measures to keep such information secret and confidential as alleged herein. Pursuant to the Allergan-Liquidia Agreements, Allergan restricted access to Allergan's proprietary information to only Liquidia employees who had a need to know and were bound to keep such information confidential. Allergan required Liquidia not to disclose or use Allergan's proprietary information other than for the purposes of the Agreements.

54. As alleged herein, Defendants used improper means to acquire knowledge of Allergan's trade secrets by failing to abide by their confidentiality obligations under the Allergan-Liquidia Agreements. And Defendants have disclosed and used, and continue to disclose and use, Allergan's trade secrets without Allergan's express or implied consent. Misappropriating Allergan's trade secrets saved Defendants substantial time and/or money in developing new glaucoma treatments.

55. Defendants' misappropriation of Allergan's trade secrets has been and still is willful and malicious, entitling Allergan to exemplary damages and reasonable attorney fees under California Civil Code §§ 3426.3(c) and 3426.4, respectively.

56. Defendants' misappropriation has caused and will continue to cause Allergan significant economic and competitive harm and irreparable injury. Allergan has no adequate remedy at law unless Defendants are enjoined from their wrongful conduct under California Civil Code § 3426.2.

# THIRD CLAIM FOR RELIEF

## Unfair Competition

### (California Business And Professions Code § 17200 *et seq.*)

### (Against All Defendants)

57. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 56 above, as if fully set forth herein.

58. Defendants' conduct as described above constitutes unfair business acts or practices in violation of California Business and Professions Code § 17200 *et seq*.

59. Defendants' unfair conduct includes failing to disclose their business interests in developing a product that competes with Allergan's biodegradable intracameral implant in order to gain access to Allergan's proprietary information, breaching and/or intentionally interfering with Liquidia's contractual confidentiality obligations, using Allergan's proprietary information to develop their competing product ENV515, failing to disclose the details of their ENV515 implants when requested by Allergan's counsel in 2014, impeding Allergan's investigation of Defendants' misappropriation, and/or filing for patent applications claiming inventions that in fact belong to Allergan. Defendants' conduct significantly threatens and/or harms competition as described herein.

60. As a direct and proximate result of Defendants' unfair competition, as described herein, Allergan has suffered, is suffering, and will continue to suffer economic injury, as well as serious irreparable harm to its reputation, business, and goodwill.

61. Defendants' conduct, as described herein, has injured Allergan and will continue to cause injury for which Allergan has no adequate remedy at law. As such, Allergan is entitled to a permanent injunction prohibiting Defendants' wrongful conduct.

# FOURTH CLAIM FOR RELIEF

## BREACH OF CONTRACT

### (Against Defendant Liquidia)

62. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 61 above, as if fully set forth herein.

63. Pursuant to the Allergan-Liquidia Agreements, Liquidia was obligated to keep Allergan's proprietary information confidential and only allow access to it to Liquidia's employees who had a need to know and were bound to keep such information confidential. The Allergan-Liquidia Agreements further required Liquidia not to use or disclose such information other than as necessary for the purposes of the Agreements, and not to file patent applications claiming Allergan's trade secrets and modifications thereof.

64. Liquidia has breached the Allergan-Liquidia Agreements by using Allergan's proprietary information to develop intracameral implants, and by disclosing Allergan's proprietary information to third parties without Allergan's authorization.

65. Liquidia has further breached the Allergan-Liquidia Agreements by disclosing Allergan's proprietary information to Envisia; transferring its development of intracameral implants for glaucoma treatment to Envisia; and allowing Envisia to file patent applications claiming inventions that embody Allergan's proprietary information and modifications thereof.

66. Because of Liquidia's breaches, Allergan has suffered and will continue to suffer significant damages to be determined at trial.

67. Allergan will continue to be directly and proximately damaged and irreparably harmed if Liquidia is not enjoined from further violation of its contractual obligations. Injunctive relief is warranted to prevent further irreparable harm to Allergan as Allergan has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**(Against Defendant Liquidia)**

68. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 67 above, as if fully set forth herein.

69. Allergan and Liquidia understood that the purpose of the Allergan-Liquidia Agreements was for Allergan to evaluate Liquidia's manufacturing process and the efficacy of the resulting implants. Liquidia knew that Allergan intended to commercialize its intracameral implants for the treatment of glaucoma.

70. By spinning off Envisia, an ophthalmology company producing intracameral implants also intended for the treatment of glaucoma, Liquidia prevented Allergan from receiving the full benefits of the Allergan-Liquidia Agreements and breached the implied covenant of good faith and fair dealing. Envisia's disclosure and use of a competing intracameral implant product, which embodies Allergan's trade secrets, has harmed and continues to harm Allergan.

71. Liquidia's breach of the implied covenant of good faith and fair dealing has caused and will continue to cause Allergan significant economic and competitive harm and irreparable injury. Allergan has no adequate remedy at law unless Liquidia is enjoined from its wrongful conduct.

## SIXTH CLAIM FOR RELIEF

## INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS

**(Against Defendant Envisia)**

72. Plaintiff repeats and incorporates by reference the allegations in paragraphs 1 through 71 above, as if fully set forth herein.

73. Pursuant to the Allergan-Liquidia Agreements, Liquidia was obligated to keep Allergan's proprietary information confidential and only allow access to its employees who had a need to know and were bound to keep such information

confidential. The Allergan-Liquidia Agreements further required Liquidia not to use or disclose such information other than necessary for the purposes of the Agreements, and not to file patent applications claiming Allergan's trade secrets and modifications thereof.

74. As Envisia and Liquidia shared many of the same executive officers, Envisia knew of the Allergan-Liquidia Agreements and Liquidia's confidentiality obligations under these agreements.

75. Envisia's choice to seek the transfer of Allergan's confidential and proprietary information from Liquidia induced Liquidia to breach the Allergan-Liquidia Agreements.

76. Liquidia has breached the Allergan-Liquidia Agreements by using Allergan's proprietary information to develop intracameral implants, and by disclosing Allergan's proprietary information to third parties without Allergan's authorization.

77. Liquidia has further breached the Allergan-Liquidia Agreements by disclosing Allergan's proprietary information to Envisia; transferring its development of intracameral implants for glaucoma treatment to Envisia; and allowing Envisia to file patent applications claiming inventions that embody Allergan's proprietary information and modifications thereof.

78. Because of Liquidia's breaches, Allergan has suffered and will continue to suffer significant damages to be determined at trial.

79. Envisia's intentional interference with Allergan and Liquidia's contractual relations has caused and will continue to cause Allergan significant competitive harm and irreparable injury. Allergan has no adequate remedy at law unless Envisia is enjoined from its wrongful conduct.

## PRAYER FOR RELIEF

80. WHEREFORE, Allergan respectfully requests that this Court enter judgment in its favor and against Defendants and grant the following relief:

81. A judgment that Liquidia and Envisia have misappropriated Allergan's trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*;

82. A judgment that Liquidia and Envisia have misappropriated Allergan's trade secrets in violation of the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.*;

83. A judgment that Liquidia and Envisia have violated California Business and Professions Code § 17200 *et seq.*;

84. A judgment that Liquidia has breached the valid, enforceable, written Allergan-Liquidia Agreements;

85. A judgment that Liquidia has breached the implied covenant of good faith and fair dealing;

86. A judgment that Envisia intentionally interfered with the contractual relations between Allergan and Liquidia;

87. A preliminary and permanent injunction against Defendants, enjoining them from misappropriating Allergan's trade secrets and from conducting all business activities that incorporate, use, or embody Allergan's trade secrets and modifications thereof;

88. An order awarding Allergan damages assessed against Defendants pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*;

89. An order awarding Allergan exemplary damages pursuant to the Defend Trade Secrets Act for Defendants' willful and malicious conduct;

90. An order awarding Allergan damages assessed against Defendants pursuant to the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.*;

91. An order awarding Allergan exemplary damages pursuant to the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et seq.* for Defendants' willful and malicious conduct;

92. An order, pursuant to California Business and Professions Code § 17203, awarding restitution to Allergan for Defendants' acts of unfair competition resulting in their unjust enrichment;

93. A preliminary and permanent injunction, pursuant to California Business and Professions Code § 17203, enjoining Defendants from any further act of unfair competition;

94. An order awarding Allergan damages adequate to compensate for Liquidia's breach of the Allergan-Liquidia Agreements, together with interest and costs for damages for which an adequate remedy at law exists, including lost profits, price erosion, a decrease in value to Allergan's business, the cost of researching and developing the trade secrets and costs to remedy the effects of the misappropriation;

95. An order directing Defendants to assign to Allergan any and all interests in patents and patent applications of the United States and other countries relating to biodegradable intracameral implants for glaucoma treatment;

96. Punitive damages for Defendants' willful and wanton misappropriation and tortious conduct;

97. Expenses, costs, attorney fees, pre- and post-judgment interests; and

98. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

99. Allergan demands a trial by jury of all issues triable by a jury.

Dated: June 8, 2017

JEFFREY T. THOMAS
ANNE Y. BRODY
MATTHEW C. PARROTT
GIBSON, DUNN & CRUTCHER LLP


By: *s/ Jeffrey T. Thomas*
       Jeffrey T. Thomas

Attorneys for Plaintiff
ALLERGAN, INC.